**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No. 09-cv-00546-REB-MEH

ARKANSAS VALLEY DRILLING, INC., a Colorado corporation,

    Plaintiff,

v.

CONTINENTAL WESTERN INSURANCE COMPANY, an Iowa corporation,

    Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**Blackburn, J.**

This matter is before me on the **Defendant's Motion for Summary Judgment and Memorandum Brief in Support Thereof** [#14][1] filed June 8, 2009. The plaintiff filed a response [#16] and the defendant filed a reply [#17]. I grant the motion.[2]

### I. JURISDICTION & CONTROLLING LAW

I have jurisdiction over this case under 28 U.S.C. § 1332 (diversity). The plaintiff asserts claims under the law of the state of Colorado. Colorado law controls the resolution of the substantive issues in this diversity case. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Royal Maccabees Life Insurance Co. v. Choren*,

---

[1] "[#14]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

[2] The issues raised by and inherent to the motion for summary judgment are fully briefed, obviating the necessity for evidentiary hearing or oral argument. Thus, the motion stands submitted on the briefs. *Cf.* **FED. R. CIV. P. 56(c)** and **(d)**. *Geear v. Boulder Cmty. Hosp.*, 844 F.2d 764, 766 (10th Cir.1988) (holding that hearing requirement for summary judgment motions is satisfied by court's review of documents submitted by parties).

393 F.3d 1175, 1180 (10th Cir. 2005). Federal law controls procedural issues. **See, e.g., Sims v. Great American Life Ins. Co.**, 469 F.3d 870, 877 (10th Cir. 2006).

## II. STANDARD OF REVIEW

Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); **Celotex Corp. v. Catrett**, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A dispute is "genuine" if the issue could be resolved in favor of either party. **Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.**, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); **Farthing v. City of Shawnee**, 39 F.3d 1131, 1135 (10th Cir. 1994). A fact is "material" if it might reasonably affect the outcome of the case. **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); **Farthing**, 39 F.3d at 1134.

A party who does not have the burden of proof at trial must show the absence of a genuine fact issue. **Concrete Works, Inc. v. City & County of Denver**, 36 F.3d 1513, 1517 (10th Cir. 1994), **cert. denied**, 115 S.Ct. 1315 (1995). Once the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper. **Concrete Works**, 36 F.3d at 1518. All the evidence must be viewed in the light most favorable to the party opposing the motion. **Simms v. Oklahoma ex rel Department of Mental Health and Substance Abuse Services**, 165 F.3d 1321, 1326 (10th Cir.), **cert. denied**, 120 S.Ct. 53 (1999). However, conclusory statements and testimony based merely on conjecture or subjective belief are not competent summary judgment evidence. **Rice v. United States**, 166 F.3d 1088, 1092 (10th Cir.), **cert.**

*denied*, 120 S.Ct. 334 (1999); ***Nutting v. RAM Southwest, Inc.***, 106 F.Supp.2d 1121, 1123 (D. Colo. 2000).

### III.  FACTS

The parties filed a stipulation [#13] of undisputed facts relevant to the defendant's motion for summary judgment.  This statement of facts is drawn from the stipulation.  Plaintiff, Arkansas Valley Drilling, Inc., is the owner of certain real property located at 125 Deckers Drive, Penrose, Colorado (the Property).  The Property consists of a 5,500 square feet metal building which is built on top of a concrete slab-on-grade floor.  Defendant, Continental Western Insurance Company, issued to Arkansas Valley policy no CWP 2575456-22, effective June 1, 2006 through June 1, 2007 (the Policy).   A copy of the Policy is attached to the stipulation as exhibit 1.  The Policy covers the Property.  This case presents a dispute about the scope of the coverage for a certain loss under the Policy.

### A.  ARKANSAS VALLEY'S LOSSES & CLAIMS

On or about January 6, 2007, Arkansas Valley submitted its first claim, no. 10086438, to Continental Western for damage to an office area at the Property resulting from the rupture of an indoor frozen pipe located in the northwest corner of the first floor of the Property. *Stipulation* [#13], Exhibit 2 (First Notice of Loss). Continental Western adjusted and paid Arkansas Valley $11,844.35 for this claim.

On or about January 19, 2007, Arkansas Valley notified Continental Western of a second claim, no. 10100780, that occurred when an underground water pipe ruptured, causing sinking and heaving of the concrete slab-on-grade floor at the property.  Arkansas Valley submitted a Second Notice of Loss that indicates "while doing repairs a break in the water main was discovered it (sic) was determined it had been leaking for

3

months causing damage in the foundation."  *Stipulation* [#13], Exhibit 3 (Second Notice of Loss).

Arkansas Valley theorizes that the soil under the building's concrete slab-on-grade floor was saturated by water that escaped from the indoor frozen pipe that ruptured in the building's first floor office on January 6, 2007.  Arkansas Valley theorizes further that the water below the surface of the ground that emanated from the indoor frozen pipe, underwent a cycle of freezing and thawing, and that the contraction and expansion associated with the freezing and thawing cycle exerted pressure on the underground water pipe, thereby causing the underground pipe to break, resulting in the second loss reported on January 19, 2007.  For the purpose of its motion for summary judgment only, Continental Western accepts as undisputed Arkansas Valley's theories about the sequence of causative events that led to the second loss.  By letter, dated August 21, 2007, Continental Western denied coverage for Arkansas Valley's second claim, citing the Policy's exclusions.

## B.  RELEVANT POLICY PROVISIONS

The Policy provides replacement cost coverage for the Property, subject to certain limitations and exclusions, up to the Policy's limit of $537,000.  The Policy provides:

> We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

*Stipulation* [#13], Exhibit 1 (Policy) at POL 000020.

Paragraph 2 of the Building and Personal Property Coverage Form excludes certain property from the definition of Covered Property under the Policy. The Form provides, in pertinent Part:

4

Covered Property does not include:

* * * *

m. Underground pipes, flues or drains . . . .

*Policy* at POL 000021.

In addition, the Policy contains certain exclusions. The Commercial Property Causes of Loss – Special Form provides, in pertinent part:

**B. Exclusions**

* * * *

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other causes or event that contributes concurrently or in any sequence to the loss.

* * * *

**b. Earth Movement**

(1) Earthquake, including any earth sinking, rising or shifting related to such event;

(2) Landslide, including any earth sinking, rising or shifting related to such event;

(3) Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

(4) Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

But if Earth Movement, as described in b.(1) through (4) above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

* * * *

**g. Water**

(1) Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;

5

(2) Mudslide or mudflow;

(3) Water that backs up or overflows from a sewer, drain or sump; or

(4) Water under the ground surface pressing on, or flowing or seeping through:

    (a) Foundations, walls, floors or paved surfaces;
    (b) Basements, whether paved or not; or
    (c) Doors, windows or other openings . . . .

But if Water, as described in g.(1) through g.(4) above, results in fire, explosion or sprinkler leakage, we will pay for the loss of damage caused by that fire, explosion or sprinkler leakage.

2. We will not pay for any loss or damage caused by or resulting from any of the following:

\* \* \* \*

d.(4) Settling, cracking, shrinking or expansion;

\* \* \* \*

f. Continuous or repeated seepage or leakage of water, or the presence of condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

*Policy* at POL 000036 - POL 000038.

In its Complaint [#1-5], Arkansas Valley asserts three claims for relief. First, Arkansas Valley seeks a declaratory judgment under §13-51-505, C.R.S., and C.R.C.P. 57, declaring that the Policy provides coverage for the losses claimed in the Second Notice of Loss. Second, Arkansas Valley asserts a claim for breach of contract, alleging that Continental Western breached its contract, *i.e.*, the Policy, with Arkansas Valley when Continental Western refused to provide coverage for the losses claimed in the Second Notice of Loss. Third, Arkansas Valley asserts a claim for bad faith breach of insurance contract. Continental Western seeks summary judgment on all three claims.

6

### III. INTERPRETATION OF INSURANCE CONTRACTS

This case hinges on an interpretation of the Policy. In this diversity action, Colorado law provides the principles by which the Policy must be interpreted. *Leprino Foods Co. v. Factory Mut. Ins. Co.*, 453 F.3d 1281, 1287 (10th Cir. 2006). Under Colorado law, insurance contracts are to be construed in accordance with the general laws of contracts. *Federal Deposit Ins. Corp. v. American Casualty Co.*, 843 P.2d 1285, 1289 (Colo. 1992); *Marez v. Dairyland Ins. Co.*, 638 P.2d 286, 288 - 289 (Colo. 1981), *overruled on otr. grounds*, *Friedland v. Travelers Indem. Co.*, 105 P.3d 639, 642-643 (Colo. 2005). An insurance contract must be interpreted according to the plain and ordinary meaning of its language. *Kellogg v. Metro. Life Ins. Co.*, 549 F.3d 818, 829 (10th Cir. 2008); *Chacon v. American Family Mut. Ins. Co.*, 788 P.2d 748, 750 (Colo. 1990). When the language used in a contract is plain and its meaning is clear, the agreement must be enforced as written. *In re May,* 756 P.2d 362, 368 (Colo. 1998); *Fire Ins. Exch. v. Rael by Rael*, 895 P.2d 1139, 1142 (Colo. App. 1995).

Courts should be wary of rewriting contract provisions and should give the words contained in the contract their plain and ordinary meaning, unless contrary intent is evidenced within the contract itself. *See, e.g., Lovell v. State Farm Mut. Auto. Ins. Co.*, 466 F.3d 893, 902 (10th Cir. 2006) (noting that courts should not rewrite insurance policy provisions that are clear and unambiguous) (citations omitted); *Cyprus Amax Materials Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo. 2003) (courts should give the words contained in an insurance policy their plain and ordinary meaning). Courts may neither add provisions to extend coverage beyond that contracted for, nor delete provisions to limit coverage. *Cyprus Amax*, 74 P.3d at 299. When interpreting a

7

policy's provisions, a court's construction "must be fair, natural, and reasonable rather than strained and strictly technical." *Massingill v. State Farm Mut. Auto. Ins. Co.*, 176 P.3d 816, 825 (Colo.App. 2007) (*citing Pub. Serv. Co. v. Wallis & Cos.*, 986 P.2d 924, 939 (Colo. 1999)).

When an insurance company seeks to limit or exclude coverage under the terms of an insurance policy, the insurer bears the burden or proving that a particular loss falls within an exclusion in the contract. *Colorado Intergovernmental Risk Sharing Agency v. Northfield Ins. Co.*, 207 P.3d 839, 842 (Colo. App. 2008). If a limitation or exclusion in an insurance contract is unambiguous, then that limitation or exclusion must be enforced. *Id*.

Arkansas Valley argues that two genuine issues of material fact remain in this case and, therefore, summary judgment is improper. The two issues cited by Arkansas Valley are (1) whether the damage caused by the ruptured indoor pipe is covered under the Policy; and 2) whether an ambiguity exists in the terms of the Policy. *Response* [#16], p. 9. Both of these issues are issues of law that must be resolved by the court. *Thompson v. State Farm Fire & Cas. Co.*, 165 P.3d 900, 901 (Colo. App. 2007) (interpretation of insurance policy presents a question of law); *Horne Engineering Services, Inc. v. Kaiser-Hill Co., LLC*, 72 P.3d 451, 453 (Colo. App. 2003) (determination of whether a contract is ambiguous is an issue of law). These issues of law properly are resolved on Continental Western's motion for summary judgment.

Arkansas Valley notes than an ambiguity in an insurance contract must be construed against the insurer. *Novell v. American Guar. and Liability Ins. Co.*, 15 P.3d 775, 778 (Colo. App.1999). However, Arkansas Valley does not argue that any

8

particular provision or provisions in the Policy are ambiguous. A contract is ambiguous only if it is reasonably susceptible of more than one meaning. *Home Engineering*, 72 P.3d at 453. "In ascertaining whether certain provisions of a document are ambiguous, the instrument's language must be examined and construed in harmony with the plain and generally accepted meaning of the words employed, and reference must be made to all the provisions of the agreement." *Kane v. Royal Ins. Co. of America*, 768 P.2d 678, 680 (Colo.1989). Having examined the relevant language in the Policy, quoted above, I conclude that the Policy provisions in question are not ambiguous.

## IV. ANALYSIS

Continental Western relies on two provisions of the Policy as independent bases for its determination that Arkansas Valley's loss claimed in the Second Notice of Loss is not covered under the Policy.

### A. WATER UNDER THE SURFACE OF THE GROUND EXCLUSION

First, Continental Western relies on the water under the surface of the ground exclusion, as stated in section B.1.g.(4) of the Causes of Loss - Special Form. I highlight below the key provisions on which Continental Western relies.

**B. Exclusions**

> 1. We will not pay for loss or damage **caused directly or indirectly by** any of the following. Such loss or damage is **excluded regardless of any other cause or event that contributes concurrently or in any sequence** to the loss.
>
> \* \* \* \*
>
> **g. Water**
>
> \* \* \* \*
>
> (4) **Water under the ground surface pressing on, or flowing or seeping through**:

9

> (a) **Foundations, walls, floors or paved surfaces**;
> (b) Basements, whether paved or not; or
> (c) Doors, windows or other openings . . . .

*Policy* at POL 000036 - POL 000037 (water under the surface of the ground exclusion).

Arkansas Valley theorizes that the soil under the building's concrete slab-on-grade was saturated by water that escaped from the indoor frozen pipe that ruptured in the building's first floor office on January 6, 2007. Arkansas Valley theorizes further that the water below the surface of the ground that emanated from the indoor frozen pipe, underwent a cycle of freezing and thawing, and that the contraction and expansion associated with the freezing and thawing cycle exerted pressure on the underground water pipe, thereby causing the underground pipe to break, resulting in the second loss reported on January 19, 2007. I note that the Second Notice of Loss indicated that the water main "had been leaking for months causing damage to the foundation." *Second Notice of Loss*. For the purpose of Continental Western's motion for summary judgment, it is undisputed that the underground water pipe ruptured, causing sinking and heaving of the concrete slab-on-grade floor at the Property. *Stipulation* [#13], ¶ 10. This series of events constitutes water under the ground surface pressing on foundations and floors. The plain meaning of the provisions of the Policy, quoted above, excludes coverage for losses caused by water under the surface of the ground.

Arkansas Valley argues that the water under the surface of the ground exclusion is not applicable, under the stipulated facts, because only one loss occurred and the rupture of the frozen indoor water pipe was the sole cause of the loss. *Response*, pp. 5 - 6. Arkansas Valley argues that the rupture of the frozen indoor water pipe initiated a sequence of events that led, ultimately, to water under the surface of the ground

10

causing sinking and heaving of the concrete slab-on-grade floor. Because losses caused by the rupture of the frozen indoor water pipe are covered, Arkansas Valley argues, losses caused by events whose initial cause was the rupture of the frozen indoor water pipe also are covered.

Applying the plain meaning of the relevant policy terms, I disagree. A loss caused by water under the surface of the ground is "excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss." *Policy* at POL 000036 (¶ B.1.). According to the stipulated facts, the rupture of the frozen indoor water pipe was an event that contributed concurrently and/or in sequence to the presence of water under the surface of the ground and the losses caused by water under the surface of the ground. Under the plain meaning of the language of the concurrent or sequential cause provision, paragraph B.1., however, the losses caused by water under the surface of the ground are not covered by the Policy even if the rupture of the frozen indoor water pipe was the initial event or a concurrent event that contributed to the water under the surface of the ground.

Arkansas Valley argues that, under **Koncilija v. Trinity Universal Ins. Co.**, 528 P.2d 939, 941 (Colo App. 1974), the losses for which it claimed coverage in the Second Notice of Loss are covered under the Policy. In **Koncilija**, a broken pipe in the floor of a house "caused water to soak into the ground beneath the house, which, in turn, caused the ground to subside. A portion of the concrete flooring and a part of the house settled and cracked as a result." **Koncilija**, 528 P.2d at 29. The relevant insurance policy excluded coverage for losses caused by earth movement, earth sinking, and water below the surface of the ground. *Id*. The **Koncilija** court adopted the general principle that in determining whether a loss is within an exception in a policy, when "there is a

11

concurrency of different causes, the efficient cause - the one that sets others in motion - is the cause to which the loss is to be attributed, though the other causes may follow it, and operate more immediately in producing the disaster." The court concluded that the efficient cause of the loss in question was the broken pipe, a covered cause, and that losses resulting from that efficient cause were covered by the policy. *Id.*, p. 30 - 31.

However, the holding in ***Koncilija*** was limited significantly in ***Kane v. Royal Ins. Co. of America***, 768 P.2d 678, 679 (Colo.1989). The insurance policy at issue in ***Kane*** excluded losses caused by flood, surface water, waves, overflow of streams or other bodies of water. *Id*. The insureds suffered losses as a result of a dam failure, and the resulting flooding. The insurance company denied coverage under the flood exclusion. The insureds argued that the efficient moving cause of their losses was third party negligence which led to the dam failure. Third party negligence was covered by the insurance policy. The ***Kane*** court concluded that the clear language of the insurance policy in question precluded application of the ***Koncilija*** efficient moving cause rule.

> Under the policy language here, the insureds' loss which is caused by, resulting from, contributed to or aggravated by a flood is excluded regardless of the existence of any other contributing cause. Unlike in ***Koncilja***, there is no inconsistency or ambiguity in the inclusionary and exclusionary language of the insurance policies in this case.
>
> Moreover, the "efficient moving cause" rule set forth in ***Koncilja*** does not control our decision in this case. We believe that the "efficient moving cause" rule, if it were to be adopted by this court, must yield to a well-settled principle of law: namely, that courts will not rewrite a contract for the parties.

***Kane***, 768 P.2d at 685 (citation omitted).

In ***Thompson v. State Farm Fire & Cas. Co.***, 165 P.3d 900, 901 (Colo. App. 2007), the court addressed a water under the surface of the ground exclusion similar to

the exclusion at issue here. The plaintiffs purchased a homeowner's insurance policy from State Farm. While the policy was in effect,

> the building supply pipe for the domestic plumbing system that runs from the street water main under the interior basement floor slab began to leak, causing water to enter plaintiffs' basement through the slab and foundation. The basement and some personal property sustained damage. Plaintiffs submitted a timely claim to State Farm, which denied coverage based upon the "water below the surface of the ground" exclusion in the policy.

*Id*. at 901.

The policy at issue included coverage for accidental direct physical loss to property caused by the following perils, except as provided in the losses not insured portion of the policy. The coverage included:

> 12. Sudden and accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or from within a household appliance.

*Id*. at 902. The losses not insured portion of the policy provided, in relevant part:

> We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:
>
> * * * *
>
> c. Water damage, meaning:
>
> * * * *
>
> (3) water below the surface of the ground, including water which experts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

*Id*.

The **Thompson** court concluded that the policy excluded coverage for the loss in

question:

> The plain language of the policy excludes any loss from water below the surface of the ground that leaks through a foundation, regardless of cause and regardless of whether or not the water arises from natural or external forces. The policy does not make any distinction among the sources or causes of the water damage. To find such a distinction would be to disregard some terms and add other terms to the contract, which we are not at liberty to do.

*Id*. at 902. Noting the holdings in both ***Koncilija*** and ***Kane***, the ***Thompson*** court concluded that the language of the policy at issue in ***Thompson*** precluded the application of the ***Koncilija*** efficient moving cause rule. *Id*. at 903. Citing ***Kane***, the ***Thompson*** court concluded that it was required to enforce the plain terms of the policy and could not alter those terms by applying the efficient moving cause rule. *Id*.

Notably, the policy at issue in ***Thompson*** included language similar to the language in paragraph B.1. of the Continental Western Policy. The ***Thompson*** policy excluded coverage for various specified events "whether other causes acted concurrently or in any sequence with the excluded event to produce the loss." *Id*. at 902. That language is similar to the policy provision in question here. "We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss." As in ***Thompson***, this clear and unambiguous policy language is controlling. Applying this language to the stipulated facts, I conclude that the loss claimed by Arkansas Valley in the Second Notice of Loss is excluded from coverage under the water under the surface of the ground exclusion in the Policy.

## B. EARTH MOVEMENT EXCLUSION

14

Second, Continental Western relies on the earth movement exclusion, as stated in section B.1.b.(4) of the Causes of Loss - Special Form.

> **B. Exclusions**
>
> > 1. We will not pay for loss or damage **caused directly or indirectly by** any of the following. Such loss or damage is **excluded regardless of any other cause or event that contributes concurrently or in any sequence** to the loss.
> >
> > * * * *
> >
> > **b. Earth Movement**
> >
> > * * * *
> >
> > (4) Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

*Policy* at POL 000036 (earth movement exclusion).

For the purpose of Continental Western's motion for summary judgment, it is undisputed that the underground water pipe ruptured, causing sinking and heaving of the concrete slab-on-grade floor at the Property. *Stipulation* [#13], ¶ 10. This series of events constitutes earth sinking, rising or shifting, and includes soil conditions such as expansion, freezing, thawing, and the action of water under the ground surface. The plain meaning of the provisions of the Policy, quoted above, excludes coverage for losses caused by such movements of the earth.

As with the water under the surface of the ground exclusion, Arkansas Valley argues that the earth movement exclusion is not applicable under the stipulated facts because only one loss occurred and the rupture of the frozen indoor water pipe was the sole cause of the loss. *Response*, pp. 5 - 6. Under the plain meaning of the language of the concurrent or sequential cause provision, paragraph B.1., quoted above, the losses caused by earth movement are not covered by the Policy even if the rupture of

the frozen indoor water pipe was the initial or a concurrent event that contributed to the earth movement. For the reasons detailed in Section IV.A. of this order, *supra*., the plain language of the policy must be enforced.

## V. CONCLUSION & ORDERS

In their stipulated facts [#13], the parties provide all of the facts relevant to a resolution of this insurance coverage dispute. Viewing the undisputed facts in the record in the light most favorable to Arkansas Valley, I conclude that no reasonable fact finder could find for Arkansas Valley on its claims for declaratory judgment, breach of contract, or bad faith breach of contract. Rather, interpreting the relevant provisions of the Policy under the standards described in this order, I conclude as a matter of law that the loss claimed by Arkansas Valley in the Second Notice of Loss is excluded from coverage under the Policy. I conclude that Continental Western is entitled to judgment as a matter of law on Arkansas Valley's claims.

**THEREFORE, IT IS ORDERED** as follows:

1. That the **Defendant's Motion for Summary Judgment and Memorandum Brief in Support Thereof** [#14] filed June 8, 2009, is **GRANTED**;

2. That **JUDGMENT SHALL ENTER** in favor of the defendant, Continental Western Insurance Company, an Iowa corporation, against the plaintiff, Arkansas Valley Drilling, Inc., a Colorado corporation;

3. That each of the claims asserted by the plaintiff in its Complaint [#1-5] is **DISMISSED** with prejudice;

4. That the defendants are **AWARDED** their costs to be taxed by the Clerk of the Court pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1;

5. That the Trial Preparation Conference currently set for April 2, 2010, at 9:30

a.m., and the jury trial, currently set to begin on April 19, 2010, at 8:30 a.m., both are **VACATED**;

      6.  That the parties' **Joint Motion To Vacate Trial Date** [#29] filed March 1, 2010, is **DENIED** as moot; and

      7.  That this case is **CLOSED**.

Dated March 29, 2010, at Denver, Colorado.

                                                                              **BY THE COURT:**

                                                                              */s/ Robert E. Blackburn*
                                                                              Robert E. Blackburn
                                                                              United States District Judge